Good afternoon, your honors. Robert Gombiner on behalf of Jack Jeakins. The government here failed to provide sufficient evidence to sustain two of the counts in the indictment, specifically counts seven and eight. And equally importantly, the Court imposed a sentence in this case which relies virtually entirely on factors that under Blakely and Hamline the jury should have found. So I think there are – I'd first like to just briefly discuss the – I know you've heard briefly a lot this morning, but I'll try to be honest here – the sufficiency of evidence, because really there's not very much to discuss. And the government took what was essentially one trip involving Mr. Jeakins and the minor in this case and chose to break it up into four segments. But there were months apart between these trips, and the child returned home and then left again. How could that be one trip? GOMBINER Well, your honor, actually, that's not really the case here in that the whole sequence of events that the government presented at trial involved conduct going back from 1999. But the allegations in the indictment only range from October of 2002 until January 23, 2003. So the activities that were charged in the indictment involved basically a trip from Salem to Colorado, from Colorado to Florida, from Florida back to Colorado, and then from Colorado back to Washington. But this didn't involve his going back home in the interim or anything like that. It was when – TABOR Yeah, there was a period where they stayed in Colorado for, I think, two months where Mr. Jeakins got a job and worked there. That sort of broke the trip. But otherwise, it was – you could say that it was a trip from Oregon to Colorado to Florida back to Colorado to Oregon. GOMEBINER But the only substantial period in there, if I'm right, is a two-month period where they stayed in Colorado. TABOR That's correct. Unfortunately, the dates, as with many of the facts in this case, were somewhat fuzzy. But the point I want to make is that for two of the counts, the government simply presented no evidence of either actual sexual activity or anything that would allow a rational prior effect to conclude that sex was a dominant purpose of the trip. GOMEBINER Well, other than – what's the – I think that's right, that there may have been, for those two counts, no specific testimony that any sexual acts occurred. I think in one of them, the boy said, no, there hadn't been any. There are only two answers to that either. There's some general testimony that – and it's not very clear what it applies to – that while they were on the road, they would pull over for rest stops and there would be sexual acts in the car. It's not clear when those occurred and which trips. But what about the general testimony that during the entire period, there was regular sex going on between the boy and – and I think he said about three times a week in general. DRESSELHAUS Well, if – there's two answers to that. First, the testimony was extremely unclear as to how much sex happened and what kind it was, because – GOMEBINER There was oral sex, is what it was. That was pretty clear. DRESSELHAUS Right. But there was also – there was also testimony about masturbation. GOMEBINER That was earlier. DRESSELHAUS That was earlier. GOMEBINER Yeah. DRESSELHAUS But the juvenile in this case, when he was questioned, the question went, how many times did you have sex? And I'm not going to quote it exactly, but it was basically, I don't know, then more than 10, I guess more than 50, and then 100. And then he says something to the – yes or maybe, I don't really recall exactly. But it's very unclear as to when this was happening and how many times it was happening. But the point that there was – GOMEBINER This is three times a week, doesn't it? DRESSELHAUS Well, he said three times a week, but he didn't say over what period of time. I mean, obviously, if it was three times a week over four years, it would be substantially more than 100. If it was – GOMEBINER The question is, during your trip from Florida back to Colorado, did you engage in sexual activity while you were in Colorado? This last trip, the two months you were there, answer yes, Holiday Inn, yes. How often would you do that, three times a week? DRESSELHAUS Right. That's – I would – the way I read that, and I think this – the only way you can read it, was that when they were in Colorado, they were having sex. GOMEBINER During your trip from Florida to Colorado? DRESSELHAUS Well, I'm – GOMEBINER I guess I can understand your – the inference you're drawing, but couldn't the jury reach a different inference? DRESSELHAUS Well, I don't really think so, because the questioning was – the question, what about when you left Denver and went to Colorado just this last trip? Did you engage in sexual activity in Florida? Answer, I don't remember. Question, is it possible you did? Answer, yes. We did not challenge the count for sufficiency. We did not challenge the count that encompassed the time that they were staying in Colorado, and Mr. Jenkins was working as a welder, and they were staying in a motel there. I agree that on a sufficiency basis, there's evidence sufficient to support that count. It's the trip from Colorado to Florida that the evidence does not support. The fundamental problem here, I think, is that the government – GOMEBINER When you're traveling on the road, how long did you stay in Florida before that? When you're traveling on the road, do you have sexual contact while you're traveling? Like pull over, do anything like that? Answer, yes. Question, where does that – just at rest stops, in the car? Yeah. DRESSELHAUS Right. But the difficulty with that is that it doesn't – because the testimony in the case involved many road trips, and the government put on testimony regarding this entire relationship, and they took other trips where they were traveling in a car. The problem was that they didn't specify whether or not that testimony involved the trip to Florida. I mean, the only testimony that was directly – you know that they're talking about the trip to Florida is what I just quoted, and that's on ER-501. GOMEBINER Yeah, I'm looking at it, yeah. I mean, I agree. You know, it's a little frustrating in a way, because the testimony was very vague and unclear. But the point that I would like to make is that when the government chooses to break things up into different counts instead of just charging one count, as they well could have, it's not too much to ask that they just provide what I also agree is a very low threshold. I mean, sufficiency of evidence cases, at least from my reading, the Federal reporters tend to be not greeted with great enthusiasm. But this is the rare case where the evidence is just not there, period. BREYER So if we agree with you, then what difference does it make on the sentence? GOMEBINER Well, it – actually, it doesn't make that much of a difference on the sentence, because the guidelines wouldn't really be affected that greatly. Now, of course, the real crux of this case is that we've now entered a new world, whether brave or not, and at least according – I mean, I don't think I can cite the New York Times' additional authority, but the accounts that are – the arguments from are not going to be around much longer in their current form, anyway. And the crux of the sentencing argument is that virtually every one of the findings that the Court made are enhancements that should have been found by the jury, and that includes the finding about care, custody, and supervisory control, the finding about use of a court concluded that there was sexual activity, because, of course, the jury never had a finding. Its verdicts do not in any way indicate that it did find that any actual sexual activity occurred. The grouping guidelines, even the counterfeiting guidelines, are subject to that, to the fact that – Let's assume for a moment the Supreme Court would say tomorrow, guidelines are no good, everything has to be done by juries, and we had to send this back for re-sentencing. What would it be that we would have to decide before doing that? Obviously, you have the motion to suppress. That has nothing to do with the guidelines. Correct. Is there – and you've made an argument that the evidence on counts 7 and 8 is insufficient, which doesn't matter a lot, but that's a separate argument. Is there anything else that is unrelated to or unaffected by the guideline decision? I think all our other arguments are implicated by the guidelines, I think, because all the other arguments – Well, it was a four-year upward departure. Well, the upward departure – That makes a big difference. The upward departure – Counts 7 and 8. Okay. It does make a big difference, but – But the things that are not guideline issues, as far as you're concerned, are the motion to suppress and whether there's sufficient evidence to justify counts 7 and 8. Right. Because I agree the upward departure issue is not – I mean, once it's not technically a guideline issue, then you can't – you're not – it doesn't involve 2G and the applications to that or 2B 5.1, the applications to that. But it's certainly the entire basis for the upward departure is on facts that under Amling and Blakely that the jury should have been finding. So, yeah. And you've already argued the 7 and 8 issue of insufficiency of evidence. I think the motion to suppress is pretty well argued in the brief. Is there anything you wanted to add on that? No. And I realize it's been a long morning, so I'm going to not – Probably longer for you than us, because, you know, you have to listen to everybody else before you look on. That's right. And my head is spinning with lots of different interesting tales from various places. But the one point I do want to make is under the – Do you have anything to add on I-84? No, I mean, desperately. I do have a case in Idaho. I-94 is really – I don't know what to say. You've already stopped. But the one thing I do want to say is, possibly more pertinently, is that under the Castro case, which, in fact, Your Honor was, I think, the author of, I think this is a case where if the guidelines don't apply, Mr. Jenkins or – don't – or, rather, that Blakely and Ameline do apply, Mr. Jenkins may well be in a position where he has served all the sentence that he – that could be given to him constitutionally. So I think that – He's been in since January 23rd, 2003, so that's about 21 months. He's been in since the day he was arrested. And while there are myriad ways to calculate the guidelines, I'm not going to belabor the court with them, I think under at least some analysis, the analysis I would use, his sentence is 18 to 24 months or possibly 24 to 30 months. So I think that this is a case where, under Castro, it might be appropriate to remand it right away. And thank you very much, Your Honor. Thank you, counsel. Good afternoon, Your Honors, and may it please the Court and counsel. My name is Mike Lang. I'm an assistant United States attorney in this district. I was also one of the trial attorneys on this case. I'll limit my remarks to the sufficiency of the evidence claim, taking Judge Reinhart's lead, unless you have questions specific to the other issues. The defendant in this case was appropriately found guilty of Counts 7 and 8. Those counts have very limited elements to them. Each of them requires, first, proof of transportation from one State to another, and secondly, that one of the dominant purposes for that transportation is for illegal sexual activity. I'm sorry. That doesn't bring the complaint. How many counts are there that involve this whole journey, odyssey, from Oregon to Colorado to Florida and back? Five counts total. Five total. And so on three of them, there's no question of the sufficiency of the evidence. That is correct, Your Honor. So we're only talking about the other two, which really don't make a lot of difference, I gather. Yes, Your Honor. Okay. I think the Court would, is... No, no. I just want to know whether we're having an intellectual exercise, which is always entertaining, or whether we're doing anything worthwhile to save society. Your Honor, I wondered that about some of the issues in this case myself at this level. I do think that it could make a difference, depending upon the Supreme Court's ultimate decision in Booker and Fanfan, that there might be some interplay with the number of counts. I don't know that yet. And... Now, let me ask you, what you did convict him, where it's not disputed, of what three trips? One when he was in Colorado? So is that the Oregon to Colorado branch? It's actually two trips. Counts 1 and 2 charge the defendant with traveling from Oregon to, excuse me, from Colorado to Washington, and Count 2 related to transporting him from Colorado to Washington. Those were grouped together. So those are the two counts I was referring to. So of the various legs in the journey, only two legs are not being challenged on this case. So Florida to Colorado, Colorado to Washington are not being challenged. It's the initial leg from Oregon to Colorado, and then Colorado to Florida that are being challenged. And it's the government's submission, Your Honor, that there was ample evidence of the defendant's dominant purpose for transporting this minor around the country, wherever they went. Okay. So you really don't depend on the fact that you have shown that during those particular segments, there's specific evidence that, yes, on that part of the trip, we did engage in sexual conduct. You're relying on the fact that that was the purpose of the whole journey, that that was the dominant purpose, it was taking the boy with him for that whole period of time. Your Honor, there was some evidence that they had they, as I believe Your Honor pointed out earlier, that there was some evidence that they pulled over to the sides of the road and engaged in sex. But, you know, it doesn't say when that was, which brand, which wing of the trip. And because of that, I, you're right, I cannot say, and when I asked Tyler himself, did you have sex when you were in Denver that first time, he said no. I mean, that's clear. And when I asked him, did you have sex in Florida, he said, I don't remember. But because of that additional evidence about pulling to the side of the road, I don't want to simply come out and say that they didn't have sex anywhere along those trips. Did we prove it beyond a reasonable doubt that they had sex in Florida? No, we did not. Did we prove that they had sex in Colorado during that first leg? No, we did not. Did the government prove that the defendant transported him for the purpose of sex? I believe the evidence in total would convince at least one rational fact finder that, yes, that was their purpose for that journey and for each of the journeys charged. Unless the Court has any other questions on any of the other issues, I believe the Court has signaled that you feel that the briefs are sufficient on the other issues and that Amaline and — I have a question on, which will go to the sentencing, but — Yes. Why should count 7 be treated differently from count 8? If you recall, one was put at level 21, one was put at level 24. Yes. It appeared that the judge was getting sort of angry with counsel and upped it to 24. And the next one was at 21. Is there any reason for that? I could not see any, Your Honor. I think that's a fair question. And I didn't see any distinction, quite frankly, in why the Court did it other than he got sidetracked on other issues. But he did find as to — I think he could have properly found a level 24 on the trip from Colorado to Florida based on the intent to commit a sexual act. Does it make any difference on the sentence, though? Yes. See, that's — And that's why — that's why I didn't address it at the trial level and was not going to address it here unless questioned. Thank you. What's your — counsel suggested that we remand this per Castro. What's your response to that? Your Honor, I think that that would be unjust in terms of the overall sentence that would be imposed in this case, particularly in light of — You know, all that means is that you remand it to the district court to consider whether he wants to do anything before the Supreme Court acts. He has all the options of saying, I'm going to wait for the Supreme Court decision. I'm going to reconsider it now if he thinks it's unjust, because it might be. But it can't — couldn't be unjust, the simple act of remand. No, you're right. You're right. And forgive me for my confusion, Your Honor. I think, based on the sentence that Judge Zilli imposed, I would be surprised if he decided to resentence and release the defendant immediately. But it's possible. Well, that's not really — I guess — I mean, otherwise we have to hold it here, or he holds it, and then decides whether or not he wants to make any adjustments, and then we go again. I mean, I — it seems this is not a classic Castro situation where it's apparent that the defendant would be released. I think what the defense — defendant's arguing is that I would make arguments for immediate release, and that's a different situation. But I just wondered if you had an opinion on that. I gather your preference would be — Not strongly, Your Honor, one way or the other, no. Thank you. Thank you very much. The case just argued will be submitted. The Court will stand in recess for the day. All rise. The Court is in recess for the day. Thank you.
judges: D Nelson, Reinhardt, Thomas